UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Pastor Benjamin A. Johnson, et al.,                    Civ. No. 11-23 (MJD/LIB)
on behalf of themselves and others
similarly situated,

Plaintiffs,

vs.                                        REPORT AND RECOMMENDATION

The Evangelical Lutheran Church of
America and Board of Pensions of the
Evangelical Lutheran Church in America,

Defendants.

This matter came before the undersigned United States Magistrate Judge upon the Motion

of the Defendant Evangelical Lutheran Church of America ("ELCA") to Dismiss the Third

Amended Complaint.  A hearing on the Motion was conducted on January 17, 2012.  The case has

been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636(b)(1).

For reasons outlined below, the Court recommends that ELCA's Motion to Dismiss be granted.

I.      BACKGROUND

On July 22, 2011, United States District Court Judge Michael J. Davis dismissed Plaintiffs'

Second Amended Complaint ("SAC") as against the Defendant ELCA.  (Docket No. 51).  Pursuant

to Judge Davis' Order, the Court granted Plaintiffs 30 days to file a new amended complaint alleging

additional facts against ELCA.  On August 22, 2011, the Plaintiffs filed a Third Amended Complaint

("TAC") asserting renewed claims against the ELCA.  (Docket No. 69).

Plaintiffs bring their action on behalf of themselves and a class defined as "[a]ll persons in

the United States who elected, from January 1, 1988 through November 2009 pursuant to the ELCA

Retirement Plan, to receive retirement accumulations in the form of a lifetime annuity or pension." (TAC ¶ 66). The TAC alleges claims against the Evangelical Lutheran Church of America ("ELCA") and the Board of Pensions of Evangelical Lutheran Church of America ("Board"). Presently before the Court is the Defendant ELCA's motion to dismiss the TAC's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6).

The TAC provides the following allegations in support of the claims against the ELCA.

The ELCA offers its eligible employees a defined contribution retirement plan under Internal Revenue Code 403(b)(9) ("Plan"). Since the plan is offered by a church, it is exempt from the provisions of ERISA. (TAC ¶ 17). The ELCA established the Board to administer the Plan. (TAC ¶¶ 12, 58).

Pursuant to the plan, defined contributions are made on behalf of participating members into their individual accounts. (TAC ¶ 13). The Plan offers participants various options to direct their funds. For instance, participants can choose to receive "benefits in the form of a lifetime pension – also referred to by Defendants as an 'annuity.'" (TAC ¶ 2). Accounts are considered "active" when Plan participants choose to invest their accumulations into funds invested in the equity or fixed income markets. (TAC ¶ 18). After choosing the annuity option, the participant cannot retract the election and must remain in the annuity option. (TAC ¶ 2).

According to the TAC, one Plan Document, the "Summary Plan Descriptions"[1] ("SPD") represented the lifetime annuity to be a safe and stable retirement option because it (1) stated the annuity was a guaranteed payment for life (TAC ¶¶ 25, 27, 29, 31-32, 38-40, 42-45); (2) promising

---

[1] These SPDs were published and provided to proposed class members every year. (TAC ¶ 14). They describe the terms of the ELCA Retirement Plan. Id.

-2-

that any increases to the monthly annuity payment were permanent (TAC ¶¶ 25, 27, 33, 41, 46); and (3) implying that it was not subject to market risk (TAC ¶¶ 31, 34).  Specifically, the SPD promised that "[a]ny increase is permanent and applies to all payments made to you, your joint annuitant and beneficiaries."  (TAC ¶ 33).  Moreover, the Plan Documents state that "there will be no downward adjustment of the basic pension coming from a bond or balanced fund."  (TAC ¶ 24).  In addition, the Plan documents provided that active accounts are different from an annuity because "accumulations in [active] account[s] are vulnerable to the fluctuations in the market" and remain "subject to market gains and losses."  (TAC ¶¶ 30, 31).  Plaintiffs' maintain that information regarding annuities made no such disclosures.

The TAC additionally asserts that in December 2008, the Board sent a letter to class members which for the first time informed them that annuity payments were subject to market risk and that class members should expect their annuity payments to be decreased in 2010.  (TAC ¶ 47). Further, the 2008 Annual Report issued in June 2009 amended the description about annuities to include statements about market risk.  (TAC ¶ 48).   Then, in November 2009, the SPD included new language which described the annuity fund as "[t]he ELCA Annuity Fund, like other investments, participates in the gains and losses of the market."  (TAC ¶¶ 52-56).

In the TAC, the Plaintiffs assert allegations attempting to show that the ELCA is inseparably intertwined with the Board.  In particular, the TAC asserts that the ELCA itself describes the Board as on of its "service unit" and is governed by a 17 member Board of Trustees elected by the ELCA Churchwide Assembly.   (TAC ¶¶ 58-59).   Even though the Board handles the day to day administration of the Plan, the ELCA retains responsibilities.  The ELCA Constitution mandates that

"any significant . . . decrease in benefits to the members" must be approved by the Church Council. (TAC ¶¶ 60, 80; Diller Dec. Ex. A 17.61.02).   Additionally, the Constitution requires the Churchwide Assembly to "approve the documents governing the ELCA Pension" and mandates that the Church Council "review policy established by the [B]oard and take action on any policy that would change significantly the documents establishing and governing the ELCA Pension . . ." (TAC ¶¶ 60, 80, 95-96, 99-100; Diller Decl. Ex. A. 17.61.01-02).

In reliance on these allegations in the TAC, the Plaintiffs asserts three claims against the ELCA: breach of contract, breach of fiduciary duty, and alter ego liability.   The breach of fiduciary duty clams are based on the ELCA's alleged breach of the duty to monitor and breach of the duty to disclose. In the present motion, ELCA seeks to dismiss all claims against it.   The Court considers the parties' arguments below.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted.   "When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]." Riley v. St. Louis County, 153 F.3d 627, 629 (8th Cir. 1998).   Moreover, all reasonable inferences from the facts alleged in the complaint must be drawn in favor of the nonmoving party.   See Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004); Waldron v. Boeing Co., 388 F.3d 591, 593 (8th Cir. 2004). Fed. R. Civ. P. 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This requires a Plaintiff to allege "enough facts to state

-4-

a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The plaintiffs must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations and quotations omitted).   Plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level." Id.  Courts must undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against each defendant "across the line from conceivable to plausible." See Iqbal, 129 S.Ct. 1937 at 1950, 1952.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Farnham Street Financial, Inc. v. Pump Media, Inc., 2009 WL 4672668 at *3 (D. Minn. Dec. 8, 2009) (citing Iqbal, 129 S.Ct. at 1949).

   Facts pled which "give the defendant fair notice of what the claim is and the grounds upon which it rests" meet the 12(b)(6) standard. Twombly, 550 U.S. at 555.  When analyzing a complaint on a 12(b)(6) motion to dismiss, courts "should read the complaint as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).  Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

### III.   DISCUSSION

### A.   Breach of Contract

In the TAC, Plaintiffs allege that "[t]he terms of Plaintiffs' and the Class Members' Retirement Plan benefits which are set forth in the written Plan documents, constitute a valid and binding contract between Plaintiff Class Members and Defendants." (TAC ¶ 74). Plaintiffs assert that the Constitution, Bylaws and Continuing Resolution require that the ELCA exercise the ultimate authority over changes in its retirement plan benefits. (TAC ¶ 60, 80). Specifically, the governing plan documents state that the "Church Council shall . . . (b) approve any changes in the ELCA Pension and Other Benefits Program when there is to be: . . . (2) a significant decrease in benefits to the members." (TAC ¶¶ 60, 80; ELCA Const. 17.61.02). Moreover, Plaintiffs assert that "ELCA had the ultimate authority over the 2009 decision to reduce annuity payments," because it had the right to approve decreases in Plan benefits. (TAC ¶¶ 60, 80). Therefore, according to the Plaintiffs, all significant decreases in benefits must be approved by the ELCA. (Pls.' Mem., p. 7-8). Plaintiffs maintain the ELCA breached the parties' agreement by approving the decreases in annuity payments or by failing to prevent the Board from implementing the decreases. (Pls.' Mem., p. 8).

ELCA argues that the breach of contract claim should be dismissed because the TAC does not allege any facts that ELCA had any part in the reduction of annuity payments. (Def's Mem., p. 9). In fact, according to ELCA, the Plan document and ELCA's Constitution both expressly contradict the Plaintiff's argument that ELCA had anything to do with the reduction in benefits. Id. Additionally, ELCA argues that the Plan's governing documents appreciate the variable nature of the Plan's annuity. The ELCA argues that the Plan's language reserves the power to adjust annuities

to the Board because it states "annual adjustments to such payments shall be made on a calendar year basis as determined by the ELCA Board of Pensions, based on such factors as it deems appropriate." (Diller Dec. B § 10.04). Additionally, the ELCA Constitution provides that the Board alone has authority to "establish interest crediting rates" for annuitizing benefits." (Diller Dec. Ex. A 17.61.A05(m)).

Plaintiffs respond by stating that the change in annuity benefits was the type required to be approved by the ELCA. The TAC alleges that in 2009 "the Board announced that the deficit gap in between the assets in the ELCA Annuity Fund and the projected lifetime benefits to members was 26%." (TAC ¶ 49).[2] Thus, the Board stated that "[e]ffective January 1, 2010, monthly annuity payments will be decreased by 9%" and "the Board of Pensions anticipates that monthly annuity payments will be decreased by an additional 9% in both 2011 and 2012." (TAC ¶ 49). Plaintiffs maintain that such large decreases are not ministerial, but are significant decreases in benefits to members requiring the approval of the ELCA Church Council. (Pls. Mem., p. 8). Further, Plaintiffs allege that the SPD only discusses increases in benefits (TAC ¶ 33) and makes no mention of any decreases in monthly benefits. According to the Plaintiffs, these facts demonstrate that reduction must be approved by the ELCA. (Pls. Mem., p. 9).

A breach of contract claim under Minnesota law contains the following elements: "(1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." Parkhill v. Minn. Mut. Life Ins. Co., 174 F.Supp.2d 951, 961 (D. Minn. 2000).

---

[2] According to the Complaint, this information was communicated through a letter from the Board of Pensions CEO.

Like with Plaintiffs' claim against ELCA in the SAC previously dismissed by this Court, the TAC fails to "specifically allege that ELCA is responsible, or even had the authority, for the actions underlying the alleged breaches" as necessary to survive a 12(b)(6) motion to dismiss on the breach of contract claim.  (July 22, 2011 Order [Docket No. 51], p. 9).  In fact, the allegations supporting Plaintiffs' TAC mirror the allegations in the SAC and provide no new, additional facts that would support Plaintiffs' breach of contract claim.  The specific paragraphs in the TAC relied upon by the Plaintiffs in their memorandum opposing ELCA's motion to dismiss to support their breach of contract claim add no new factual allegations in support of the breach of contract claim beyond those already rejected in the Court's earlier Order dismissing Plaintiffs' claims in the SAC against ELCA. In fact, many paragraphs in the TAC are exactly the same as those found in the SAC.  Other paragraphs in the TAC simply reword sections of the SAC or add additional conclusory legal argument, but fail to include any new <u>facts</u> supporting Plaintiffs' breach of contract claim.

For instance, Plaintiffs rely upon TAC paragraphs 33.  However, paragraph 33 of the TAC is the same as paragraph 29 of the SAC.  In addition, paragraph 49 of the TAC is the same as the SAC's paragraph 45.  The so-called new allegations in the TAC relied upon by the Plaintiffs, paragraph 60 and 80, provide no new <u>facts</u> in support of Plaintiffs' claim.  Paragraph 60 of the TAC restates paragraph 53(l) of the SAC which reads, "ELCA Bylaw 17.61.02 requires that the ELCA Church Council must approve any significant increase or decrease in benefits to members under the ELCA Pension and Other Benefits Program." (SAC)  Similarly, paragraph 60 of the TAC simply states conclusions that:

> The ELCA has the ultimate authority over changes in the ELCA retirement plan benefits administered by the Board.  The ELCA's bylaws require that any significant increase or

> decrease in benefits to members under the ELCA Pension and Other Benefits Program must be approved by the ELCA. (ELCA Bylaw 17.61.02.)  The decrease in benefits, the breach of contract, and the breaches of fiduciary duties alleged herein could not have occurred without the ELCA's affirmative approval or its failure to act as required by its constitution, bylaws and continuing resolution.

Undoubtedly, paragraph 60 from the TAC purports to expand on the information provided in the SAC.  However, the additional information provided does not provide any new facts in support of Plaintiffs' breach of contract claim.  Instead, it simply adds an additional legal conclusion to paragraph 53(l) of the SAC such as "[t]he ELCA has the ultimate authority over changes in the ELCA retirement plan benefits administered by the Board."  (TAC ¶ 60).

Like paragraph 60 of the TAC, paragraph 80 of the TAC relies upon ELCA Bylaw 17.61.02.  The paragraph states:

> The ELCA had the ultimate authority over the 2009 decision to reduce annuity payments and its actions resulted in the reductions.  The ELCA's bylaws require that any significant increase or decrease in benefits to members under the ELCA Pension and Other Benefits Program must be approved by the ELCA.  (ELCA Bylaw 17.61.02.)  The decrease in benefits could not have occurred without the ELCA's affirmative approval or its failure to act as required by its constitution, bylaws and continuing resolutions.  Under the documents governing the ECLA and the Board, the Board does not have the authority, and cannot act alone, to reduce annuity payments.

(TAC ¶ 80).  Again, beyond the statements from the ELCA Bylaws found in the SAC, this paragraph simply states a legal argument or conclusion and does not provide any new facts in support of Plaintiffs' claim.  Such "conclusory statements will not pass muster. . ." on a motion to dismiss under Rule 12(b)(6).  Lancaster v. N. States Power, Co., 2011 WL 54441115, at *2 (D. Minn. Nov. 9, 2011)(citing Iqbal, 129 S.Ct. at 1949)).

The allegations of the TAC supporting Plaintiffs' renewed breach of contract claim against ELCA fail to provide any additional, new facts showing that ELCA undertook or had the authority to undertake the actions giving rise to the alleged breach of contract claim beyond those already rejected in the Court's prior order dismissing the breach of contract claim in the SAC against ELCA. For these reasons, ELCA's motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be granted as to Plaintiffs' breach of contract claim.

### B.  Breach of Duty to Disclose

The TAC alleges that ELCA breached a fiduciary duty to disclose the risks associated with the annuity.   In support of the claim, Plaintiffs point to the ELCA Constitution, Plan Documents, and Bylaws.   The Constitution states that the "Churchwide Assembly shall: a. approve the documents governing the ELCA Pension."  (Diller Dec. Ex. A. § 17.61.01).  Moreover, the "Church Council shall: a. review policy established by the board and take action on any policy that would change significantly the documents establishing and governing the ELCA Pension."  (Diller Dec. Ex. A § 17.61.02).  Consequently, according to the Plaintiffs, while the Constitution did create the Board to manage the day-to-day operations of the fund, it also required that the ELCA approve the documents creating and governing the Plan and any actions by the Board significantly changing Plan documents. (Pls' Mem., p. 10) (citing TAC ¶¶ 60, 80). In addition to the ELCA Cosntitution, "[t]he ELCA's bylaws require that any significant increase or decrease in benefits to members under the ELCA Pension and Other Benefit Program must be approved by the ELCA." (TAC ¶ 60)(citing ELCA Bylaw 17.61.02).  Plaintiffs maintain that this duty necessarily required the Board to approve

material changes to the way the Plan operated and to ensure that such changes were reflected in the Plan documents.  (Pls' Mem., p. 11).

ELCA maintains that no allegations in the TAC support the conclusion that it had a duty to communicate with participants regarding the Plan's benefits.  (Def's Mem., p. 11).  Further, ELCA asserts that it had no duty to disclose because the Board alone has the responsibility to communicate to Plan participants about benefits since the Constitution charges the Board to provide summary plan descriptions "outlining all benefits to be provided as a part of the ELCA Pension and Other Benefits Program").

To state a claim for breach of fiduciary duty, a plaintiff must plead "the existence of a fiduciary duty, breach, causation and damages." Hot Stuff Foods, LLC v. Dornbach, 726 F.Supp.2d 1038, 1043 (D. Minn. 2010).   A fiduciary has the duty to "disclose to the beneficiary fully, frankly and without reservation all facts pertaining to the trust."  Norwest Bank Minnesota N., N.A., v. Beckler, 663 N.W.2d 571, 581 (Minn. Ct. App. 2003).  "A 'fiduciary' is [a] person who is required to act for the benefit of another person on all matters within the scope of their relationship. The duty imposed on fiduciaries is the highest standard of duty implied by law." Swenson v. Bender, 764 N.W.2d 596, 601 (Minn. Ct. App. 2009) (citations omitted).  As the Court noted in its prior Order dismissing the breach of fiduciary duty claims in the SAC against ELCA, "the laws imposing duties upon fiduciaries relating to the management or investment of trust assets are not implicated when an entity amends an employee benefit plan, thereby acting as a settlor amending a trust."  (Docket No. 51, p. 12) (citing Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 444 (1999); Schultz v. Windstream Commc'ns, Inc., 600 F.3d 948, 951 (8th Cir. 2010)).

Like with Plaintiffs' renewed breach of contract claim in the TAC, Plaintiffs have failed to allege any new facts in the TAC beyond those found in the SAC supporting their claim that ELCA owed a fiduciary duty to disclose to Plaintiffs.  As such, the reasoning of the Court in its July 22, 2011 Order dismissing the breach of fiduciary duty claim against ELCA previously remains applicable.  (Docket No. 51).  There, the Court held that "[t]he Board, not ELCA, is the Plan fiduciary, in charge of administering and managing the Plan, as set forth in both the SAC and the Plan Documents."  (Docket No. 51, pp. 10-11).  Additionally, the SAC failed to "specifically allege that ELCA is responsible, or even had the authority, for the actions underlying the alleged breaches."  (Id., p. 9).  In making its determination, the Court relied upon a number of allegations in the SAC and in plan documents.  The same allegations remain materially unchanged in the TAC, and Plaintiffs have not asserted any additional facts supporting their allegations that the ELCA owes a fiduciary duty to disclose to the Plaintiffs.

For instance, paragraph 53(b) of the SAC states that the Board "administers the ELCA's retirement, health, and related-benefit plans and manages the trusts for these benefit plans."  Similarly, paragraph 58 of the TAC states that the "Board of Pensions was created by the ELCA to administer its employee benefit plans and manage the trusts for those plans (ELCA Constitution chapter 17) . . ."  Likewise, the portions of the ELCA Constitution, Plan, and Bylaws cited in the SAC and already considered by the Court in its prior Order remain part of the TAC and cannot be construed as additional, new evidence to support Plaintiffs' breach of the duty of disclose claim in the TAC.  In particular, the Court considered sections 8.01 and 12.01 of the Plan when making its determination on the breach of fiduciary duty claims found in the SAC.  (Docket No. 51, p. 11).

Section 12.01 of the Plan states that the Board "shall control and manage the operation and administration of the Retirement Plan and make all decisions and determinations incident thereto." (Diller Dec., Ex. B).  The same Plan states that the Board "shall, in its sole discretion, select the Investment funds in which the ELCA Retirement Trust shall invest pursuant to the Member investment instructions. . ."  (Diller Dec., Ex. B, § 8.01).   In addition, the Court relied on ELCA Constitution § 17.61.A05 which provides that the Board manages and operates the pension plan and provides pension benefits. (Docket No. 51, p. 11)(Diller Dec., Ex. A).  These same provisions remain part of the TAC and support the Court's finding that the TAC, like the SAC, evince that the Board, and not ELCA, acted as the Plan fiduciary responsible for managing the Plan.

The limited additional portions of the ELCA Constitution set out in the TAC and now relied upon the Plaintiffs fail to "nudge" Plaintiffs' breach of the fiduciary duty to disclose claim any further "across the line from conceivable to plausible," Iqbal, 129 S.Ct. 1937 at 1952, than was the case with the SAC where the breach of fiduciary duty claim against ELCA was dismissed by the Court.  For example, Plaintiffs rely on statements that the "Churchwide Assembly shall: a. approve documents governing the ELCA Pension" and the "Church Council shall: a. review policy established by the board take action on any policy that would change significantly the documents establishing and governing the ELCA Pension."  (Pls' Mem. p. 14) (citing TAC ¶¶ 60, 80, 95-96, 99-100 and Diller Dec. Ex. A., § 17.61.01) (emphasis in original).  However, similar assertions were also found in the SAC and determined to be insufficient to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) in the Court's prior order.  In particular, the SAC states that the "ELCA Church Council must approve any significant increase or decrease in benefits to members;" "the ELCA

-13-

Board of Pensions' policies, procedures, and operations shall be reviewed by the Church Council in order to assure conformity with the  governing documents of this church and with Churchwide Assembly actions;" that § 17.61.02 of the ELCA Constitution requires that the ELCA Church Council must approve any significant increase or decrease in benefits to members under the ELCA Pension and Other Benefits Program.  (SAC ¶¶ 53(l), 53(j)).  The TAC includes the same assertions. It alleges that the "ELCA's bylaws require that any significant increase or decrease in benefits to members under the ELCA Pension and Other Benefits Programs must be approved by the ELCA;" "the decrease in benefits could not have occurred without the ELCA's affirmative approval or its failure to act as required by its constitution, bylaws, and continuing resolutions;" and that "the Board's policies, procedures, and operations shall be approved by the ELCA."  (TAC ¶¶ 60, 80, 59).

The Plaintiffs also rely upon ELCA Constitution § 17.61.01 stating that the "Churchwide Assembly shall: a. approve the documents governing the ELCA Pension" in opposing the motion to dismiss.[3]  While this provision was not cited in its entirety in the SAC, it was mentioned, and therefore, constituted part of the SAC, (SAC ¶ 53(h)) (reading that "the ELCA Board of Pensions is governed by ELCA Bylaws 17.61.01-17.61.07" )[4] and it was therefore considered by the Court in its prior Order dismissing the breach of fiduciary duty claim against the ELCA.

---

[3] Plaintiffs also rely on ¶¶60 and 80 of the TAC.  However, as discussed above, the paragraphs do not add any additional facts beyond those that were asserted in support of the SAC which was dismissed as against the ELCA

[4] In fact, the entire ELCA Constitution constitutes part of the SAC because it was cited throughout.  See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir.1999) (finding that court may consider the complaint, matters of public record, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6)).

Plaintiffs have not provided any new, additional facts supporting their breach of fiduciary duty of disclosure claim.  Consequently, the Court should grant ELCA's Rule 12(b)(6) motion to dismiss as to Plaintiffs' renewed claim in the TAC of breach of the fiduciary duty to disclose.[5]

## C.      Breach of Duty to Monitor

Plaintiffs assert a newly delineated Count in the TAC that the Defendants breached their fiduciary duties "by failing to (a) monitor their appointees and/or electees; (b) review sufficient information to satisfy themselves that the performance by the Plan's fiduciaries (ie, the Board) was in compliance with their fiduciary duties and met the needs of the Plan' and/or (c) review and or monitor the practices of the Board in general to ensure the Board was executing its duties and responsibilities in managing the Plan in conformity with the Plan documents and investment guidelines as required by the ELCA Constitution.  (TAC ¶ 111).

Minnesota law requires a trustee who delegates trust functions to "exercise reasonable care, skill, and caution in (1) selecting an agent; (2) establishing scope and terms of the delegation, consistent with the purposes and terms of the trust; and (3) periodically reviewing the agent's actions in order to monitor the agent's performance and compliance with terms of the delegation."  Minn. Stat. 501B.152(a).  "A person with discretionary authority to appoint, maintain and remove plan fiduciaries is himself deemed a fiduciary with respect to the exercise of that authority. Implicit in the fiduciary duties attaching to persons empowered to appoint and remove plan fiduciaries is the

---

[5] The Court's prior Order found that the "SAC's allegations against Defendants demonstrate that the only duties ELCA maintains with regard to the Plan that are at issue in this case are those of a settlor or participating employer, not of a fiduciary." (Docket No. 51, p. 12).  The Order reasoned that the SAC did not allege that ELCA's Churchwide Assembly "had any role in setting or altering the monthly annuity payments."  Id., p. 13.  No new, additional facts have been alleged in the TAC demonstrating that the ELCA did anything other than act as a settlor.

duty to monitor appointees." In re Xcel Energy, Inc., Securities, 312 F.Supp.2d 1165, 1176 (D. Minn. Mar. 10, 2004). However, the duty to monitor is also quite narrow. Id.

In the Court's prior Order, although recognizing that it was not a specific separately pled count of the SAC, it concluded that the "Plaintiffs have plausibly argued that ELCA is a fiduciary with respect to its duty to elect Plan fiduciaries, and therefore, also has a limited duty to monitor." (Docket No. 51, p. 13). However, the Court further stated that the "SAC does not allege that ELCA violated the duty to monitor. Therefore, the SAC fails to adequately allege that ELCA violated a fiduciary duty owed to Plaintiffs." Id. p. 14. Faced with a virtually identical TAC, the Court relies upon the prior decision that Plaintiffs have adequately pled that a duty to monitor exists. As such, the only remaining question for the Court to address as to this new, specifically stated count is whether the Plaintiffs have pled enough facts to state a plausible claim that ELCA breached the duty to monitor sufficient to survive a Rule 12(b)(6) motion to dismiss.

In support of Plaintiffs' duty to monitor claim, Plaintiffs have added a number of paragraphs to the TAC which were not present in the SAC. All of these paragraphs, however, merely state legal conclusions or elements of their claim and provide no new facts specifically demonstrating how the ELCA allegedly breached its duty to monitor. For instance, paragraph 109 states that "[a]s fiduciaries charged with electing the Plan's fiduciaries, the ELCA had a duty to monitor their appointees and/or electees." (TAC). Moreover, paragraph 110 reads "the ELCA also had a duty to review and/or monitor the Board of Pensions' policies, procedures, and operations to assure they were in conformity with the governing documents (ie, the Plan documents) and with Churchwide Assembly actions." (TAC). Paragraph 111 asserts that:

Defendants breached their fiduciary duties owed to Plaintiffs and the Class by failing to:  (a) monitor their appointees and/or electees; (b) failing to review sufficient information to satisfy themselves that the performance of the Plan's other fiduciaries was in compliance with their fiduciary duties and met the needs of the Plan; and/or (c) to review and/or monitor the practices of the Board of Pensions in general to ensure the Board was  executing its duties and responsibilities in managing the Plan in conformity with the Plan documents and investment guidelines as required by the ELCA Constitution.

Finally, paragraph 112 states that "[b]y failing to monitor the Board to ensure they met their duties to Plaintiffs and the Class Members and fulfilled the obligations of their contract with Plaintiffs and the Class Members, and by failing to review the actions and policies of the Board as required by the ELCA Constitution, the ELCA breached its fiduciary duty to monitor."

However, each of these new paragraphs found in the TAC, as outlined above, fail to provide any new, additional <u>facts</u> as to how the ELCA allegedly breached its fiduciary duty to monitor. Instead, the new allegations in the TAC constitute mere "labels and conclusions" or simply restate the elements of the claim generally and are insufficient to survive a motion to dismiss under Rule 12(b)(6).  <u>Iqbal</u>, 129 S.Ct. at 1949.

Plaintiffs attempt to make new arguments regarding the sufficiency of the same allegations in the TAC as were to be found in the SAC.  The Court already found that similar allegations in the SAC failed to state a claim that ELCA breached its duty to monitor.  (Docket No. 51, p. 14).  In its prior Order, the Court relied upon <u>Neil v. Zell</u>, 667 F.Supp. 1010 (N.D. Ill. 2009).  The Court again finds this case instructive and persuasive here.  In <u>Neil</u>, the plaintiffs asserted that the defendants had a fiduciary duty to monitor based on their powers of appointment and removal.  <u>Neil</u>, 677 F.Supp.2d at 1024.  However, the Court found that these theories were no more than speculation and were alleged "only in the most general terms."  <u>Id</u>.  The plaintiffs failed to explain <u>how</u> the

-17-

defendants breached their duty.  Id.  Likewise, in this present case, the Plaintiffs allege generally

only that the duty to monitor was breached by ELCA, but the assertions in the TAC do not contain

any specific facts as to how the ELCA failed to monitor the Board and instead rely on general

statements and mere legal conclusions.   Consequently, the Court recommends dismissal Plaintiffs'

breach of the duty to monitor claim in the TAC.

**D.     Alter Ego Liability Theory**

In Minnesota, determining whether the corporate veil should be pierced requires the

application of a two-prong test.  See Victoria Elevator Co. v. Meriden Grain Co., 283 N.W.2d 509,

512 (Minn. 1979). The first prong requires courts to consider whether a number of factors have been

demonstrated in order to determine whether the corporation functioned as a mere instrumentality

of the individuals sought to be held personally liable such as:

> insufficient capitalization for purposes of corporate undertaking, failure to observe
> corporate formalities, nonpayment of dividends, insolvency of debtor corporation at
> time of transaction in question, siphoning of funds by dominant shareholder,
> nonfunctioning of other officers and directors, absence of corporate records, and
> existence of corporation as merely facade for individual dealings.

Victoria Elevator, 283 N.W.2d at 512.  Under the second prong, which is reached if the first prong

is satisfied, a court analyzes whether piercing the corporate veil is necessary to avoid "an element

of injustice or fundamental unfairness." Id.

**1.     Corporate Form**

In the Court's prior Order, it concluded that the Plaintiffs did not adequately allege in the

SAC that the Board operated as the mere instrumentality of ELCA.  Specifically, the Court stated

that the "SAC does not allege any improper transfer of assets between ELCA and the Board.  Nor

does it allege any other type of misuse of the corporate form or plan to harm Plaintiffs." (Docket No. 51, p. 17).  While the "SAC alleges that the Board is undercapitalized, [] there is no allegation that ELCA played any role in that situation."  <u>Id</u>.  Likewise, the Court noted in its prior Order that the "ELCA Constitution shows the separation of the corporate structures governing ELCA and the Board."  <u>Id</u>.

Plaintiffs' TAC includes additional assertions beyond those found in the SAC to support liability on the basis of alter ego liability.   However, a number of these paragraphs again simply provide mere legal conclusions and do not constitute specific factual allegations supporting Plaintiffs' alter ego liability theory.

Paragraph 59 contains the new assertion that "the ELCA controls the Board of Pensions."  Paragraph 60 asserts that "[t]he ELCA has the ultimate authority over changes in the ELCA retirement plan benefits administered by the Board . . . The decrease in benefits, the breach of contract and the breaches of fiduciary duties alleged herein could not have occurred without the ELCA's affirmative approval or its failure to act as required by its constitution, bylaws and continuing resolutions."  Paragraph 58 of the TAC states that:

> [t]he Board of Pensions would not exist if it did not function for, and at the direction of the ELCA.  The Board of Pensions was created by the ELCA to administer its employee benefit plans and manage the trusts for those plans (ELCA Constitution chapter 17); the Board has no independent basis for existence. . . Indeed, the ELCA describes the churchwide organization and its service units, including the Board of Pensions, as one of the ELCA's three 'expressions,' which it declares are organized as 'one church body' and  'are all part of the ELCA.'

In this paragraph, the description of the Board of Pensions as part of "one church body" and one of ELCA's expressions were not found in the second amended Complaint.  However, the fact that the

ELCA may have referred to itself and the Board of Pensions as a joint entity does not mean that the

Board merely acted as ELCA's alter ego.  See Biofuels Automation, Inc. v. Kiewit Energy Co., 2010

WL 3023391 (D. Minn. July 28, 2010) (finding use of brand name by parent and subsidiary was not

sufficient to pierce the corporate veil).  These paragraphs constitute nothing more than "labels and

conclusions" insufficient to survive a Rule 12(b)(6) motion to dismiss.  Iqbal, 129 S.Ct. at 1949.

Another paragraph now relied upon by the Plaintiffs merely restates sections from the SAC.

Paragraph 62 of the TAC essentially repackages the assertions found in paragraph 53(n) of the SAC.

Paragraph 62 reads:

> the ELCA hires, fires and sets the salary of the Board's president.  While ELCA
> bylaw  17.61.06 states that the ELCA's presiding bishop and the Board of Pensions'
> Board of Trustees together elect the president of the Board of Pensions, the ultimate
> authority rests with the ELCA: the Board's president cannot be hired unless his or
> her hiring and salary is approved [sic] the ELCA's presiding bishop.  Similarly, the
> Board cannot fire its president without the ELCA presiding bishop's approval.

(TAC).  Similarly, paragraph 53(n) of the SAC states:

> ELCA Bylaw 17.61.06 states that: (i) the ELCA's presiding bishop and the ELCA
> Board  of Pensions' Board of Trustees together elect the president of the
> ELCA Board of Pensions and arrange of his or her annual review; (ii) the ELCA's presiding
> bishop must approve the ELCA Board of Pensions' elected president and concur
> with his or her salary established by the ELCA Board of Pensions' Board of
> Trustees; and (iii) the ELCA's presiding bishop and the ELCA Board of Pensions'
> president following recommendation by the executive committee of the ELCA Board
> of Pensions' Board of Trustees;

(SAC).

In addition, Plaintiffs contend that the Board and the ELCA share the same federal tax group

exemption demonstrating that the Board acts as an instrumentality of the ELCA.  (TAC ¶ 63)

(stating that "[t]he Board and the ELCA share the same federal tax group exemption letters.  Under

Internal Revenue Service procedures, the subordinate Board of Pensions must be affiliated with the ELCA and subject to the ELCA's general supervision and control."). However, this fact alone does not cure the deficiencies leading to the dismissal of Plaintiffs' SAC. It offers no additional factual support that the relationship between the ELCA and the Board met any of the Victoria Elevator factors and simply reiterates a close, corporate hierarchical relationship between the entities which the Court previously found to be inadequate to survive a Rule 12(b)(6) motion to dismiss.

In sum, Plaintiffs have again offered nothing more than mere conclusory allegations that the Board is undercapitalized. Moreover, the Plaintiffs have not asserted any new specific facts suggesting that the Board and the ELCA failed to observe corporate formalities, had nonfunctioning officers or directors, or failed to keep corporate records. While the assertions in the TAC may demonstrate that the two entities enjoyed a close relationship like any parent and subordinate corporate relationship, the TAC's allegations fail to state a plausible claim that the Board operated as an alter ego of ELCA.[6]

## 2.    Fundamental Unfairness

The Court's prior Order found that the "barebones allegation that injustice or fundamental unfairness will result if ELCA is not liable" was not sufficient to survive a Rule 12(b)(6) motion to dismiss. (Docket No. 51, p. 18). Moreover, the SAC was bare of any "allegation that ELCA played any role in that underfunding or that the Plan was underfunded when ELCA created it." Id.

---

[6] In fact, as the Court previously held, the "ELCA Constitution shows the separation of the corporate structures governing ELCA and the Board. For example, the Constitution provides that 'separate incorporation shall be maintained' for the Board. It enumerates the Board's responsibilities in operating and managing benefit plans, which include autonomy and independence." (Docket No. 51, p. 17-18). Plaintiffs have not asserted any new or additional facts in the TAC demonstrating that the separateness provided for in the ELCA Constitution has not been observed.

Plaintiffs argue that paragraphs 57 and 49 of the TAC demonstrate that the Board has insufficient capitalization making it unjust not to hold ELCA liable.  However, like with other allegations in the TAC, paragraph 57 in the TAC mirrors paragraph 53 in the SAC.  Similarly, paragraph 49 of the TAC is the same as paragraph 45 of the SAC. Once again, Plaintiffs have not provided any new, additional specific facts beyond those provided in the SAC to support its renewed theory that ELCA should be held liable under an alter ego analysis.  Therefore, the reasoning of the Court's prior Order remains applicable and ELCA's motion to dismiss should be granted as to Plaintiffs' alter ego liability theory.

IT IS HEREBY RECOMMENDED that:

1.    ELCA's Motion to Dismiss Plaintiffs' Third Amended Complaint [Docket No. 76] be GRANTED; and

2.    Plaintiffs' claims in the Third Amended Complaint [Docket No. 69] against Defendant ELCA be DISMISSED WITH PREJUDICE.


Dated: March 9, 2012                             s/Leo I. Brisbois
                                                 LEO I. BRISBOIS
                                                 United States Magistrate Judge

N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **March 23, 2012,** a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof.  Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.