# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

PASTOR BENJAMIN A. JOHNSON,
DR. RONALD A. LUNDEEN,
and PASTOR ARTHUR F. HAIMERL
on behalf of themselves and
all other similarly situated,

      Plaintiffs,

v.

                                 **MEMORANDUM OF LAW & ORDER**
                                 Civil No. 11-00023 (MJD/LIB)

EVANGELICAL LUTHERAN
CHURCH IN AMERICA, and
THE BOARD OF PENSIONS
OF THE EVANGELICAL
LUTHERAN CHURCH IN AMERICA,

      Defendants.

---

Scott W. Carlson, Vincent J. Esades, and Katherine T. Kelly, Heins, Mills & Olson, P.L.C.; Daniel R. Karon, Laura K. Mummert, Brian D. Penny, and Paul J. Scarlato, Goldman Scarlato & Karon, P.C.; Jackson D. Bigham and Brian M. Sund, Morrison Fenske & Sund, P.A., John S. Chapman, John S. Chapman & Associates, L.L.C., Counsel for Plaintiffs.

Nicole A. Diller, Charles C. Jackson, S. Bradley Perkins, Alison B. Willard, Morgan Lewis & Bockius L.L.P.; and Thomas S. Fraser, Lousene M. Hoppe, Nicole M. Moen, Fredrikson & Byron, P.A., Counsel for Defendants.

---

## I.      Introduction

This matter is before the Court on Plaintiffs' Motion for Class Certification

and Appointment of Class Representatives and Lead and Liaison Counsel. [Docket No. 159]  This matter is also before the Court on Defendant's Motion to Strike the Expert Report of Mark Johnson (Dkt. No. 188-1).  [Docket No. 195]  The Court heard oral argument on March 1, 2013.  For the reasons that follow, the Court grants the motion to strike and denies the motion for class certification.

## II.     Background

### A.     Factual Background

#### 1.     Defendants and The Plan

The Evangelical Lutheran Church in America ("ELCA") is a non-profit corporation organized under Minnesota law.  (Third Amended Complaint ("TAC") ¶ 11.)  ELCA was formed in 1988 as the result of a merger between the Lutheran Church in America, the American Lutheran Church, and the Association of Evangelical Lutheran Churches.  (Id.)  ELCA was initially named as a defendant in this litigation, but was subsequently dismissed with prejudice. [Docket Nos. 128, 140]

Defendant Board of Pensions of the Evangelical Lutheran Church in America (the "Board") is a non-profit corporation organized under Minnesota law.  (TAC ¶ 12.)  ELCA established the Board in 1988 to provide and administer

retirement, health, and other benefits to individuals who work for ELCA or other faith-based organizations associated with ELCA.  (Id.)  As of December 2009, there were 51,481 persons enrolled in ELCA benefits plans, 10,473 of whom were retired.  (Id.)  The Board is governed by a 17-member Board of Trustees that is elected from the churchwide membership of ELCA.  (Id.)

The Board manages the Evangelical Lutheran Church in America Retirement Plan ("the Plan").  (TAC ¶ 13.)  The Plan is a defined contribution retirement plan under 26 U.S.C. § 403(b)(9), under which participating employers make defined contributions on behalf of participants.  (Id.; Kelly Decl., Ex. 1, 1988 Plan Document at §1.03.)  The Plan provides that the Board is "responsible for all administrative decisions with regard to the form, commencement and amount of payments from this Retirement Plan." (Kelly Decl., Ex. 27, 2003 Plan § 1.03.)

The Plan is a "church plan."  (TAC ¶ 17; Kelly Decl., Ex. 1, 1988 Plan Document at § 1.03.)  Therefore, it is exempt from ERISA, absent an election to the contrary.  28 U.S.C. §§ 411(e)(2)(B), 414(e);  29 U.S.C. §§ 1002(33), 1003(b).

Under the Plan, defined contributions are made on behalf of participating members into their individual accounts.  (TAC ¶ 13.)  Plan participants have options for directing their Plan accumulations.  Before retirement, the accounts

are considered "active," and Plan participants can direct their accumulations into funds invested in the equity or fixed income markets. (TAC ¶ 18.)

Before 2001, all participants were required to annuitize their accumulations upon retirement. The accounts were then no longer considered "active." (TAC ¶¶ 23-28.) Starting in 2001, at retirement, participants had the choice of annuitizing their accumulations and receiving a monthly annuity for life, leaving their accounts "active," or a combination of the two. (TAC ¶¶ 16, 28-30; Kelly Decl., Ex. 14, 2001 Summary Plan Description at 14.) Only the first choice is at issue in this lawsuit. (TAC ¶ 16.)

Between 1988 and 1996, participants were paid their monthly annuity out of three separate funds, depending on their elections – the balanced fund, bond fund, and stock fund. (Kelly Decl., Ex. 4, 1996 Summary Plan Description at 18-19.) Between 1997 and 2003, annuity payments were paid from a single "Pension Reserve Fund" instead of the specific funds in which participants were invested. (Kelly Decl., Ex. 6, 1997 Summary Plan Description at 15.) Between 2004 and 2007, the single fund was known as the "Participating Annuity Fund." (Kelly Decl., Ex. 19, 2004 Summary Plan Description at 22.) In 2008, it was renamed the "ELCA Annuity Fund." (Kelly Decl., Ex. 23, 2008 Summary Plan Description at

14.)  The parties both refer to the single fund as the "Annuity Fund," and this name will be used in this Order.

### 2.      The Plaintiffs

Plaintiffs are three retired participants in the ELCA Plan, all of whom served as pastors at one point.  Plaintiff Pastor Benjamin A. Johnson retired in 1995 and began receiving monthly annuity payments.  (TAC ¶ 7.)  In 1995, when Johnson retired, the Plan mandated the annuitization of benefits.  (Id. ¶ 16; Diller Decl., Johnson Dep. at 247.)  His monthly annuity payments were "permanently" increased each year until January 2010, when his monthly annuity payments were reduced.  (TAC ¶ 7.)

Plaintiff Dr. Ronald A. Lundeen retired in 2002 and elected monthly annuity payments, but deferred his payments until 2007.  (Id. ¶ 8.)  He began receiving monthly annuity payments in 2007.  (Id.)  They were "permanently" increased each year until January 2010, when they were reduced.  (Id.)

Plaintiff Pastor Arthur F. Haimerl retired in February 2000.  (Id. ¶ 10.)  At that time, he was required to annuitize his account.  (Id. ¶ 16; Diller Decl., Haimerl Dep. at 118-20.)  His monthly payments "permanently" increased each year until January 2010, when they were reduced.  (Id. ¶ 16)

A fourth individual, Larry D. Cartford, was a named plaintiff until he filed a notice of voluntary dismissal on August 31, 2011.  [Docket No. 71]

Plaintiffs claim that their annuity payments were guaranteed for life and that increases in these guaranteed lifetime annuity payments would be permanent.  (TAC ¶ 1.)

### 3.     The Annuity Fund's Asset Allocation and Benchmark

The Board uses asset allocation to determine the risk and return in the Annuity Fund.  (Kapanke Decl. ¶ 2.)  The Board manages the Annuity Fund within ranges of its target allocation.  (Id. at ¶ 3.)  According to Defendant, "[f]rom its inception through December 2011, the Annuity Fund outperformed its benchmark – achieving a cumulative net return of about 177%, compared to its benchmark's cumulative return of about 155%."  [Dkt. No. 169 at 18.]  The Board maintains that it "closely monitors the Annuity Fund's funded status to ensure that it has adequate assets to support lifetime annuity payments." (Adams Decl. ¶ 8.)  The Annuity Fund was 96% funded as of December 31, 2007. (Id.)

### 4.     The Annuity Fund's Losses in 2008-2009 and The Board's Response

In 2008, the Annuity Fund experienced a 24% investment loss, which

caused the funded ratio to drop to 67% as of December 31, 2008. (Grenadier Expert Report ¶¶ 30-34.) In December 2008, the Board sent a letter to Plaintiffs stating that annuity payments were subject to market risk and that they should expect their annuity payments to be decreased in 2010. (TAC ¶ 47.)

In early 2009, the Board formed a subcommittee to address the under-funded status of the Annuity Fund. (Kapanke Decl., Ex. 1; Adams Decl., Exs. 4-5.) The Board concluded that it could not rely solely on investment gains to close the funding gap. (Adams Decl. ¶ 9.) The Board decided to make downward annual adjustments over a three-year period to bring the Annuity Fund's funded ratio to 100%. (Kapanke Decl., Ex. 1.)

In June 2009, the Board issued the 2008 Annual Report, which added statements about potential market risk in the Annuity Fund. (TAC ¶ 48.) Such warnings were not included in prior Annual Reports. (Id.) In August 2009, the Plan was revised to close the Annuity Fund to new entrants effective April 3, 2009. (Kelly Decl., Ex. 24, 2009 Plan.)

In September 2009, ELCA CEO and President John Kapanke informed Plan participants that, due to the market downturn, the Annuity Fund was underfunded by 26% and that, effective January 1, 2010, their monthly annuity

payments would decrease by 9% and would likely decrease by an additional 9%

in both 2011 and 2012.  (Kelly Decl., Ex. 25, September 2009 Letter to Plan

Participants (noting that the "historic and unexpected downturn in the

investment markets . . . created a significant gap between the net assets in the

[Participating Annuity Fund] and the projected lifetime benefit obligations to

members"); Kapanke Decl., Ex. 1)  Actual investment returns have allowed for

smaller annuity decreases and higher interest crediting rates in 2011 and 2012.

(Adams Decl. ¶ 10.)  In November 2010, the Board announced monthly annuity

payment cuts of an additional 6% for 2011, and in November 2011, the Board

announced an additional cut of 3.8% for 2012.  (Kelly Decl., Ex. 28, November

2010 Letter at 1; Ex. 29, November 2011 Letter at 1.)

## B.    Procedural Posture

On December 3, 2010, Plaintiffs filed a Complaint in Hennepin County

District Court against ELCA, the Board, and two Board executives.  On January

4, 2011, Defendants removed the case to this Court based on the Class Action

Fairness Act of 2005 ("CAFA").  On February 10, 2011, the parties filed a

stipulation of dismissal for the two Board executives.

On March 3, 2011, Plaintiffs filed their Second Amended Complaint

("SAC") against the ELCA and the Board.  On March 21, 2011, both Defendants filed a motion to dismiss, and on July 22, 2011, this Court denied the motion to dismiss as it applied to the Board, granted the motion to dismiss as it applied to ELCA, and permitted Plaintiffs the opportunity to amend with regard to ELCA.

On August 22, 2011, Plaintiffs filed their Third Amended Complaint against ELCA and the Board.  The Third Amended Complaint alleges:  Count One: Breach of Contract under Minnesota Law against both Defendants; Count Two: Breach of Fiduciary Duty of Prudence under Minnesota Common and Statutory Law against the Board; Count III:  Breach of Fiduciary Duty of Disclosure under Minnesota Common and Statutory Law against both Defendants; and Count IV:  Breach of Fiduciary Duty of Disclosure under Minnesota Common and Statutory Law against both Defendants.  Plaintiffs seek to sue on behalf of a class of Plan participants who elected, from January 1, 1988 through November 2009 pursuant to the ELCA Retirement Plan, to receive retirement accumulations in the form of a lifetime annuity or pension.  (TAC ¶ 66.)

On September 21, 2011, the Board answered the TAC and the ELCA moved to dismiss.  On June 22, 2012, this Court adopted the Report &

Recommendation of Magistrate Judge Leo I. Brisbois, which granted ELCA's motion to dismiss. Therefore, the Board is the only remaining defendant.

On July 23, 2012, Plaintiffs filed a motion for class certification and appointment of class representatives and lead and liaison counsel. [Docket No. 157] The Board opposes Plaintiffs' motion. [Docket No. 169]

On November 16, 2012, Defendant filed a Motion to Strike Mark Johnson's Expert Report, which was filed in conjunction with Plaintiff's Reply in support of its motion for class certification. [Docket No. 195]

## III. DISCUSSION

### A. Motion to Strike the Expert Report of Mark Johnson Ph.D., J.D.

#### 1. Procedural Posture

On March 7, 2012, Magistrate Judge Brisbois ruled on Plaintiffs' motion to amend the pretrial order to extend expert disclosure deadlines. [Docket No. 139] Magistrate Judge Brisbois ordered Plaintiffs to disclose any class certification experts "no later than in conjunction with service of their opening brief requesting class certification" under Rule 23. [Id. at 6] The Court also "strongly encourage[d] the Plaintiffs to disclose their class certification experts before their opening class certification brief in order to foster complete and adequate briefing

on the appropriateness of class certification."  [Id.]

On July 23, 2012 Plaintiffs filed their motion for class certification.  [Docket No. 157]  Plaintiffs did not disclose any experts at this time.

On September 10, 2012, Defendant filed its opposition to the motion for class certification.  [Docket No. 169]  In support of its opposition, Defendant filed an expert report for Dr. Steven R. Grenadier.  [Docket No. 170]  Dr. Grenadier is a Professor of Financial Economics at the Graduate School of Business at Stanford University.  [Docket No. 170]  Dr. Grenadier states that he was retained to "determine based on economic and financial evidence whether the adjustment actions implemented by the Board between 2010 and 2012 have potential differential impact on the proposed class members."  [Docket No. 170-1 at 3]

On September 12, 2012, the parties filed a joint stipulation to extend expert and dispositive motion deadlines.  [Docket No. 176]  On September 21, 2012, Magistrate Judge Brisbois issued an order on the stipulation.  [Docket No. 182]  Magistrate Judge Brisbois interpreted the request to extend expert disclosures for merits experts.  [Docket No. 182 at 2 n.2 ("In Docket No. 139, the Court established a deadline for the disclosure of class certification experts linked to the briefing schedule for any class certification motion that the plaintiffs might bring.

A class certification motion has previously been served, filed, and the hearing thereon is set before Chief Judge Michael J. Davis on November 30, 2012. Therefore, the only remaining expert disclosures and expert discovery that would be the subject of any amendment to the pretrial schedule would be for merits experts.") Magistrate Judge Brisbois extended the deadline for Plaintiffs' merits expert disclosures to March 30, 2013 and Defendant's merits expert disclosures to April 30, 2013. [Docket No. 182 at 3]

On October 25, 2012, Plaintiffs submitted a Preliminary Expert Report from Mark Johnson, Ph.D., J.D. in connection with their reply in support of their motion to certify the class. [Docket No. 188] Dr. Johnson founded ERISA Benefits Consulting, Inc., where he currently provides expert witness and other consulting services. [Docket No. 188 at Ex. A] Dr. Johnson is also currently an Adjunct Professor of Business Communication at Tarrant County College in Hurst, Texas. [Id. at Ex. 1] Dr. Johnson states that he was retained by Plaintiffs "to review the plan documents and decisions of the Board of Pensions and offer my opinion and analysis on the appropriateness of these actions in light of the nature of the governing plan documents and the applicable fiduciary standards." [Id. at Ex. A]

On November 9, 2012, Defendant deposed Dr. Johnson.  On November 16, 2012, Defendant filed a Motion to Strike Dr. Johnson's expert report.  [Docket No. 195.]

## 2.      Merits of the Motion to Strike

Defendant asserts that Dr. Johnson's report should be stricken because it is irrelevant to class certification; because it fails to comply with Federal Rule of Evidence 702; and because the report was filed after the deadline set forth by this Court's scheduling orders.

The Court grants Defendant's motion to strike for several reasons.  First, Dr. Johnson's report is irrelevant to class certification.  The Defendant, Plaintiffs, and Dr. Johnson himself, agree that Dr. Johnson's report has nothing to do with whether the purported class should be certified.  Dr. Johnson's report purports to opine on the merits of whether the Defendant breached its fiduciary duty of prudence.  This issue is not presently before the Court.

Second, the Court finds that Dr. Johnson's report fails to comply with Federal Rule of Evidence 702.  Dr. Johnson's report is not helpful to the Court because it consists solely of inappropriate plan interpretation and legal conclusions.  See In re Acceptance Ins. Cos. Sec. Litig., 423 F.3d 899, 905 (8th Cir.

2005) (affirming exclusion of expert opinions that were "more or less legal conclusions about the facts of the case . . . meant to substitute the judgment of the district court"); see also Nalbandian v. Lockheed Martin Corp., No. 10-CV-1242-LHK, 2011 WL 3881473, at *5 n.1 (N.D. Cal. Sept. 1, 2011) ("Plaintiffs' expert [Dr. Johnson] has submitted a report largely limited to a review [of] the factual record and legal conclusions regarding interpretation of the Plan, functioning at best as supplemental briefing for Plaintiffs . . . Thus the Court will not rely upon the expert reports in its abuse of discretion review."); Rengifo v. Hartford Life & Accident Ins. Co., No. 8:09-CV-1725-T-17MAP, 2010 WL 5253137, at *9 (M.D. Fla. Dec. 13, 2010) ("Because the determination of whether an ERISA plan exists and has been established or maintained calls for a legal conclusion by the Court based on the above relevant factors, the Court has not considered the affidavit of Plaintiff's expert, Mark Johnson, Ph.D., J.D., in its determination of the issue."); Halbach v. Great-West Life & Annuity Ins. Co., No. 4:05CV02399 ERW, 2007 WL 2108454, at *1, *4 (E.D. Mo. July 18, 2007) (excluding Dr. Johnson's testimony "regarding the general usage of the terms at issue in the plan documents").

Additionally, Dr. Johnson's report fails to provide any explanation or basis for his opinions.  Instead, Dr. Johnson's report interprets the Plan as disallowing

annuity reductions, assumes that the Defendant made reductions to the annuity, and then concludes that there was a fiduciary breach. The report fails to identify or apply any methodology, and improperly makes conclusory statements.

Finally, Magistrate Judge Brisbois clearly ordered Plaintiffs to disclose any class certification experts on July 23, 2012, when they filed their class certification motion. The Plaintiffs decided not to disclose an expert at that time and therefore the Court finds that they should not be permitted to rely on one now.

**B.    Motion for Class Certification**

**1.  Class Action Standard**

The class action serves to conserve "the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 155 (1982).

Pursuant to Rule 23(a), there are four threshold requirements to class certification:

> (1) the putative class is so numerous that it makes joinder of all members impractical; (2) questions of law or fact are common to the class; (3) the class representatives' claims or defenses are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

<u>In re St. Jude Med., Inc.</u>, 425 F.3d 1116, 1119 (8th Cir. 2005) (citing Fed. R. Civ. P. 23(a)) (footnote and other citations omitted).

If these prerequisites are met, the Court must then determine if the putative class is maintainable under Rule 23(b). Rule 23(b)(1) allows a class action when "prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Rule 23(b)(3) allows a class action when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Plaintiffs bear the burden of proof regarding the Rule 23 requirements. <u>Smith v. Merchants & Farmers Bank</u>, 574 F.2d 982, 983 (8th Cir. 1978). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification

must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are <u>in fact</u> sufficiently numerous parties, common questions of law or fact, etc." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541, 2551 (2011). The district courts are afforded broad discretion in determining whether or not to certify a class. <u>Gilbert v. City of Little Rock, Ark.</u>, 722 F.2d 1390, 1399 (8th Cir. 1983).

Plaintiffs seek to certify the following class for each of the three claims asserted in their TAC:

> All persons with retirement accumulations in the ELCA Annuity Fund or Annuity Bridge Fund as of April 3, 2009 and who received at least one monthly ELCA annuity payment on or after January 1, 2010.
>
> Excluded from the Class are all ELCA Board of Pensions trustees, officers and executives, all judicial officers presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action ("Class").

[Docket No. 159 at 2] This class definition is different than the definition pled in Plaintiffs' TAC.

## 2. Rule 23(a) Requirements

The Court need not address all four Rule 23(a) requirements for class certification, because Plaintiff clearly does not meet the second requirement—

that questions of law or fact are common to the class— or the third

requirement—that the class representatives' claims or defenses are typical of the

claims or defenses of the class—or the fourth requirement—that the class

representatives will fairly and adequately protect the interests of the class.

### a. Commonality

Rule 23(a)(2) requires that in order for a class to be certified "there are

questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). It is not

required "that every question of law or fact be common to every member of the

class" and the rule "may be satisfied, for example, where the question of law

linking the class members is substantially related to the resolution of the

litigation even though the individuals are not identically situated." Paxton v.

Union Nat'l Bank, 688 F.2d 552, 561 (8th Cir. 1982) (citation omitted). "In most

cases, the commonality requirement is easily satisfied because it 'requires only

that the course of conduct giving rise to a cause of action affects all class

members, and that at least one of the elements of the cause of action is shared by

all class members.'" Janick v. Cavalry Portfolio Servs., LLC, No. 06-3104

(MJD/AJB), 2007 WL 1994026, at *5 (D. Minn. July 3, 2007). A "sufficient nexus is

established if the claims or defenses for the class and the class representation

arise from the same event or pattern or practice and are based on the same legal theory." Mathers v. Northshore Mining Co., 217 F.R.D. 474, 485 (D. Minn. 2003). If the same evidence on an issue can suffice for each class member, then it is a common question. Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir. 2005).

Plaintiffs maintain that they will seek to prove with common evidence on behalf of all Class Members that the Board made the same promise to make guaranteed lifetime payments to Class Members that could not be reduced, and that the Board breached the contract when it cut every Class Member's annuity payment with an across-the-board payment reduction in 2010, 2011, and 2012. Additionally, Plaintiffs argue that commonality is satisfied because the focus for every Class Member is establishing that a contract existed, determining the duties owed by the Board under the contract, and on the law and facts regarding Defendant's reduction of annuity payments. Plaintiffs also argue that the same relief is sought for all Class Members.

The Court disagrees with Plaintiffs and finds that they cannot satisfy commonality. With respect to the breach of contract claim, Plaintiffs seek to establish that additional documents and communications, in combination with the Plan documents, form the "contract." This methodology introduces

individualized evidence and individualized inquiries regarding which documents and communications each Class Member received. These individualized inquiries cannot be answered by any evidence that is common to the class.

Additionally, commonality "requires the plaintiff to demonstrate that the class members have suffered the same injury." <u>Bennett v. Nucor Corp.</u>, 656 F.3d 802, 814 (8th Cir. 2011). The report from Defendant's expert demonstrates that most putative class members (those likely to live past 2017) were helped, not harmed, by the Board's challenged actions and did not suffer the "same injury" that Plaintiffs claim to have suffered. (Grenadier Expert Report at ¶¶ 5-8, 40-56.) Plaintiffs have not rebutted this evidence and therefore, the breach of contract claim cannot be certified because it cannot be resolved through common proof.

With respect to the breach of fiduciary duty of prudence claim, Plaintiffs must prove "the existence of a fiduciary duty, breach, causation and damages." <u>Hot Stuff Foods, LLC v. Dornbach</u>, 726 F. Supp. 2d 1038, 1043 (D. Minn. 2010). Plaintiffs rely on their expert report to establish that Defendant breached its fiduciary duty. For the reasons stated above, the Court has granted Defendant's motion to strike Plaintiffs' expert report and will not consider it when ruling on

the motion for class certification.  Based on the record before the Court, the Plaintiffs have not established that there are questions of law or fact that are common to the class, and the Court declines to certify the class on this claim.

With respect to the breach of fiduciary duty of disclosure claim, Plaintiffs must also prove "the existence of a fiduciary duty, breach, causation and damages."  Hot Stuff Foods, LLC, 726 F. Supp. 2d at 1043.  The Court finds that the evidence supporting a non-disclosure claim is not common for the entire class and therefore Plaintiffs do not satisfy commonality on this claim.  See Luiken et al. v. Domino's Pizza, LLC, 705 F.3d 370, 376 (8th Cir. 2013).  First, any Class Member's understanding of the Annuity Fund depends on the specific communications that each Class Member received, read or heard, and understood.  Second, the Class Members cannot demonstrate reliance with common evidence because the document that each Class Member relied on differs for each Class Member.  Third, the Class Members will be required to establish individualized harm.  Thus, the class cannot be certified because Plaintiffs cannot satisfy the commonality element.

### b.  Typicality

Rule 23(a)(3) requires that in order for a class to be certified, the claims or

defenses of the class representative must be typical of the class. Fed. R. Civ. P. 23(a)(3). Typicality is generally met "if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." Paxton v. Union Nat'l Bank, 688 F.2d 552, 561–62 (8th Cir. 1982) (citations omitted).

Here, Plaintiffs argue that they satisfy the typicality prong because their three claims "stem from the same facts . . . and the claims are all based on the same theory." Kimball v. Frederick J. Hanna & Assoc., P.C., Civil No. 10-130 (MJD/JJG), 2011 WL 3610129, at *4 (D. Minn. Aug. 15, 2011). Plaintiffs claim that typicality is satisfied because the Board made the same promise (i.e., that increases to their monthly annuity payment were permanent) to every Class Member, and that the breach of contract (i.e., across-the-board reductions in 2010, 2011, and 2012) each stem from a set of facts that is common to every Class Member. Plaintiffs further claim that the Class Members' annuity payments were cut by the same percentage amounts and therefore Members were damaged in a common way. See DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1174-75 (8th Cir. 1995) (typicality was satisfied because the Class Members sought the same relief, even if the amount of damages was different).

The Court disagrees with Plaintiffs and finds that they cannot satisfy typicality. A proposed class fails to satisfy the typicality prong when the legal theories alleged and relief sought by the class representatives are at odds with the interests of other class members. <u>Delsing v. Starbucks Coffee Corp.</u>, No. 08-CV-1154 (PJS/JSM), 2009 WL 3202378, at *3 (D. Minn. Sept. 30, 2009). The Defendant's expert report demonstrates that the Board's adjustment actions restored the funded status of the Annuity Fund, and that if those actions were reversed, then the Annuity Fund's ability to meet its projected future benefits obligations would also be in "serious jeopardy." (Grenadier Expert Report at ¶¶ 39-44.) Defendant's expert report also demonstrates that most putative class members were helped, not harmed, by the Board's actions that are now challenged by Plaintiffs. Plaintiffs have not offered any evidence to rebut Defendant's expert report.

The named Plaintiffs' breach of contract, breach of fiduciary duty of prudence, and breach of fiduciary duty of disclosure claims are premised on demands to continue receiving higher payments during the period when the Annuity Fund was under-funded. This demand, however, demonstrably harms other members' interests in preserving the Annuity Fund and lifetime income.

This creates irreconcilable class conflicts and makes the named Plaintiffs atypical of the class members who were helped by the Board's actions. <u>See</u> <u>Delsing</u>, 2009 WL 3202378, at *3 (denying class certification because "the interests of plaintiffs are directly opposed to the interests of at least a substantial portion of the proposed class"). Therefore, the Court concludes that Plaintiffs have not satisfied their burden of proof with respect to typicality.

### c. Adequacy

Rule 23(a)(4) requires that in order for a class to be certified the Court must determine whether the named representative and her counsel will adequately represent the interests of the class members. Fed. R. Civ. P. 23(a)(4). The adequacy requirement is satisfied when the class representative is "part of the class and possess[es] the same interest and suffer[s] the same injury as the class members." <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 594-95 (1997). The party moving for class certification has the burden to establish that she will adequately represent the class. <u>Rattray v. Woodbury Cnty., IA</u>, 614 F.3d 831, 835 (8th Cir. 2010). "The district court must decide whether Rule 23(a)(4) is satisfied through balancing the convenience of maintaining a class action and the need to guarantee adequate representation to the class members." <u>Id.</u> In particular, the

Court must determine if "the class representatives have common interests with the members of the class, and [ ] whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." Paxton, 688 F.2d at 562-63. "A failure of the putative class representative to assure the court that it will vigorously pursue the interests of class members is a sufficient basis to deny certification." Rattray, 614 F.3d at 836. The Court must "evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a)." In re Milk Prods. Antitrust Litig., 195 F.3d 430, 436 (8th Cir. 1999).

The Court finds that the Plaintiffs are inadequate class representatives for several reasons. The class representatives are inadequate because there is undisputed evidence that the class representatives' theories underlying their breach of contract, breach of fiduciary duty of prudence and breach of fiduciary duty of disclosure claims would harm a majority of the class members of their retirement security by depleting the funds in the Annuity Fund. Thus, the Plaintiffs are not similarly situated to the other retired ELCA employees who benefitted from the Defendant's decisions. The class representatives are also inadequate to represent a class on a failure to disclose claim because they each

admitted that they were aware that his annuity payments could go down.

### 3.  Rule 23(b) Requirements

Because Plaintiffs fail to meet the second, third, and fourth prongs of the

Rule 23(a) test, the Court need not analyze the Rule 23(b) requirements.

Plaintiff's proposed class is inappropriate for class certification.

Accordingly, based upon the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED**:

1.  Defendant's Motion to Strike the Expert Report of Mark Johnson (Dkt.

    No. 188-1) [Docket No. 195] is **GRANTED**.

2.  Plaintiffs' Motion for Class Certification and Appointment of Class

    Representatives and Lead and Liaison Counsel [Docket No. 157] is

    **DENIED**.

Dated:  March 26, 2013                         s/ Michael J. Davis
                                               Michael J. Davis
                                               Chief Judge
                                               United States District Court